IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JACOB SHIELDS,

          Plaintiff,

v.                                           CIVIL ACTION NO.  2:23-cv-00491

LT. TIMOTHY TIBBS, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before the Court is Defendant Steve Caudill's motion to dismiss.  (ECF No. 8.) For the reasons more fully explained below, the motion is **GRANTED**.

### I.    BACKGROUND

#### A.

    At all times relevant herein, Plaintiff Jacob Shields ("Plaintiff") was a convict housed at the North Central Regional Jail ("NCRJ").  (ECF No. 1 at 1, ¶ 1.)  On the morning of July 15, 2022, Plaintiff was escorted to a jail shower by Defendant Timothy Tibbs, an NCRJ guard.  (*Id.* at 3, ¶ 7.)  Once there, Defendant Tibbs ordered Plaintiff to strip, squat, and cough.  (*Id.*) Plaintiff complied.  (*Id.*)  However, as Plaintiff squatted, Defendant Tibbs pepper-sprayed him in his butt and genitals.  (*Id.*)  Defendant Tibbs offered no warning or justification.  (*Id.*)  A second guard—Defendant Michael Costello—soon appeared.  (*Id.*)  He too entered the shower

1

and pepper-sprayed Plaintiff without reason.[1]  (*Id.*)  Defendant Tibbs then circled back and pepper-sprayed Plaintiff for a third time, again for no reason.  (*Id.*)  This torrent of pepper-spray caused Plaintiff to suffer burning eyes and skin and shortness of breath.  (*Id.*)

Noticeably absent from this encounter was Defendant Steven Caudill.  That's because, rather than being on-site at NCRJ,[2] he was in Charleston, West Virginia.  (*Id.* at 1–2, ¶ 2.)  He's the Director of Security for the West Virginia Department of Corrections and Rehabilitation.  (*Id.*)  In this role, Defendant Caudill reviews all use of force reports from all of West Virginia's jails—including NCRJ.  (*See id.*)  Plaintiff alleges that, in the year preceding this incident, Defendant Caudill received and reviewed over 100 use of force reports from NCRJ, which were filed by Defendant Tibbs and other NCRJ guards.  (*Id.*)  Plaintiff further alleges that Defendant Caudill thus knew Defendant Tibbs and others were using excessive force on inmates and failed to intervene and prevent further instances of excessive force.  (*Id.*)

B.

Plaintiff filed suit in this Court on July 20, 2023.[3]  (ECF No. 1.)  He sued Defendants Tibbs, Costello, and Caudill.  (*Id.* at 1–2, ¶¶ 1–3.)  His complaint brings the following four claims: (1) outrageous conduct; (2) excessive force; (3) supervisor liability; and (4) conspiracy to commit fraud.[4]  (*Id.* at 4–6, ¶¶ 11–25.)  Only the third claim—supervisory liability—is levied against Defendant Caudill.  (*See id.*)  As for damages, Plaintiff seeks compensatory and punitive damages, interest thereon, and attorney's fees.  (*Id.* at 6–7.)

---

[1] The complaint does not specify where Defendant Costello pepper-sprayed Plaintiff.
[2] NCRJ is located in Greenwood, West Virginia.  *North Central Regional Jail & Correctional Facility*, W.Va. Div. of Corr. & Rehab., https://dcr.wv.gov/facilities/Pages/prisons-and-jails/ncrjcf.aspx (last visited Apr. 24, 2024).
[3] The Court has jurisdiction under 28 U.S.C. § 1331.
[4] Though not particularly germane to the current motion, Plaintiff alleges that Defendants Tibbs and Costello filed false reports and tried to cover up their alleged malfeasance.  (ECF No. 1 at 3, ¶ 8.)

2

Defendant Caudill moved to dismiss on November 6, 2023. (ECF No. 8.) Plaintiff responded in opposition on November 20, 2023, (ECF No. 10), and Defendant Caudill replied on November 27, 2023, (ECF No. 13). The matter is thus ripe for adjudication.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III. DISCUSSION

The Eighth Amendment prohibits "cruel and unusual punishments."[5] U.S. Const. amend. VIII. In the prison context, the Amendment provides inmates a floor of constitutional protection, below which prison officials may not venture—that is, prison officials may not undertake conduct that is "unnecessary and wanton[ly] inflict[s] . . . pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). Pepper-spraying an inmate for no reason falls below this standard. *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021).

Here, however, the Court is not concerned with whether Plaintiff plead plausible Eighth Amendment claims against Defendants Tibbs and Costello (he has). The Court must instead decide whether Plaintiff plausibly alleged that Defendant Caudill—their supervisor—violated Plaintiff's Eighth Amendment rights by failing to intervene beforehand and prevent the pepper-spraying.

Plaintiff brings this Eighth Amendment claim under 42 U.S.C. § 1983. That civil rights statute, the common refrain goes, "imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotation marks omitted). Equally well-known, § 1983 provides no basis for vicarious liability. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (recognizing the "firmly established . . . principle that supervisory officials may" not be held vicariously liable under § 1983 "for the constitutional injuries inflicted by their subordinates"). Prison officials may only be held liable for constitutional injuries they themselves

---

[5] "The Eighth Amendment's proscription of cruel and unusual punishments is applicable to the States through the Fourteenth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 n.11 (4th Cir. 2019).

cause. *Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

There may, of course, be more than one actor that contributes to or causes a constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). As relevant here, prison supervisors may sometimes know or have reason to believe that their subordinates are "act[ing] outside the law" and violating others' constitutional rights. *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020) (quoting *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2022)). In those cases, the supervisor must "take steps to prevent such activity." *Id.* But if the supervisor instead allows his underlings' unconstitutional conduct to continue, then he too "bears some culpability for [the] illegal conduct [and] may be held liable." *Id.* (internal quotation marks omitted). Importantly, supervisory liability is not an end-around § 1983's vicarious-liability-bar. It is instead a "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan*, 737 F.2d at 372.[6]

Plaintiffs "assume[] a heavy burden of proof in supervisory liability cases." *Id.* at 373. In the Fourth Circuit, plaintiffs seeking to impose supervisory liability must prove:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

---

[6] The Fourth Circuit has said that "pinpointing the person[] in the decisionmaking [sic] chain" responsible for remedying unconstitutional conduct is "ordinarily [an issue] of fact, not law." *Shaw*, 13 F.3d at 798–99 (quoting *Slakan*, 737 F.2d at 376). Defendant Caudill does not dispute Plaintiff's allegation that he was the one responsible for ensuring Defendants Tibbs and Costello complied with the Eighth Amendment.

*Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw*, 13 F.3d at 799). "[E]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799). So plaintiffs must, at the very least, show that the conduct complained of "has been used on several different occasions." *Id.*

*Slakan* illustrates this requirement. There, an inmate awoke one morning, discovered that he had missed his morning coffee and, while voicing his displeasure, slapped a guard on the shoulder. *Slakan*, 737 F.3d at 371. The guard retaliated by spraying the inmate in the head and neck with a firehose.[7] *Id.* The inmate then sued the guard and his supervisors, alleging they violated his Eighth Amendment rights. *Id.* In proving his supervisory liability claim, the inmate presented evidence that guards in the prison had unjustifiably sprayed other inmates with firehoses on at least seven other occasions in the year prior. *Id.* at 371, 373 n.1. The Court upheld the inmate's jury verdict and concluded that he had shown a "widespread [practice] among the guards" of using firehoses as a "routine control measure in [the] prison[]." *Id.* at 374, 375.

This case is a night-and-day difference. Simply put, Plaintiff has not alleged facts sufficient to show a widespread practice of conduct "that posed a pervasive and unreasonable risk of constitutional injury to" inmates. *Timpson*, 31 F.4th at 257 (quoting *Shaw*, 13 F.3d at 799). He never even alleged another incident of similar conduct. *Id.* at 258 (explaining that a plaintiff must point to more than "a single incident or isolated incidents" (quoting *Slakan*, 737 F.2d at 373)). Plaintiff merely posits that, because more than 100 use of force reports were filed over the course of a year, there *ipso facto* was an unreasonable amount of *excessive force* events in the prison.

---

[7] A group of fellow guards also beat the prisoner with billy clubs and teargassed his single-man cell. *Slakan*, 737 F.3d at 371.

That's a flimsy assumption, at best. *Napper v. United States*, 374 F. Supp. 3d 583, 587 (S.D. W. Va. 2019) ("[C]ourt[s] need not 'accept as true unwarranted inferences.'" (quoting *E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000))). Even if the Court were to indulge that assumption, it would still be insufficient. Plaintiff needed to allege that there was a widespread practice of the particular unconstitutional conduct complained of—that is, guards pepper-spraying inmates for no reason—not excessive force generally, which can occur any number of ways. *See Slakan*, 737 F.2d at 373 (recognizing that "supervisor[s] cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of [their] responsibilities"). He failed to do so.[8] So his supervisory liability claim must be dismissed.

      Plaintiff seemingly recognizes this fatal deficiency. In an effort to cure it, he tries to inject new facts into this case through his response brief. However, "[i]t is well-established that parties cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). He also suggests that his supervisory liability claim should not be dismissed until he "has . . . had the opportunity to conduct discovery [to] further support [his] allegations." (ECF No. 10 at 7.) This argument is unsound, though, because Rule 8 "does not unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79; *see also McCants v. Tolliver*, No. 1:11-cv-0664, 2011 WL 2893058, at *6 (N.D. Ohio July 15, 2011) ("[W]hen a plaintiff files a complaint that fails to state a claim as a matter of law, he cannot complain that he is entitled to discovery to state his claim. In the absence of a cognizable claim, Plaintiff has no right to any discovery."). Only well-pleaded claims do. *Iqbal*, 556 U.S. at 678–

---

[8] It goes without saying that, because Plaintiff failed to allege a widespread practice of unconstitutional conduct, he necessarily failed to allege actual or constructive knowledge on Defendant Caudill's part.

79. Since Plaintiff failed to state a supervisory liability claim against Defendant Caudill, he has no right to conduct discovery for his deficient claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant Caudill's motion to dismiss is **GRANTED**. The Court hereby **DISMISSES** Defendant Caudill from this case.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 25, 2024

_____
THOMAS E. JOHNSTON, CHIEF JUDGE